**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STACIE L. JOHNSON, et al, ) | |
| ) | Civil Action No. 14 - 928 |
| Plaintiffs, ) | |
| ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| v. ) | |
| ) | ECF No. 4 |
| STATE FARM MUTUAL ) | |
| AUTOMOBILE INSURANCE CO., ) | |
| ) | |
| Defendant. ) | |

## <u>MEMORANDUM OPINION ON DEFENDANT'S MOTION TO DISMISS</u>

### I. <u>Summation</u>

For the reasons set forth below, Defendant's Motion to Dismiss (ECF No. 4), in this

automobile insurance coverage case filed in the Court of Common Pleas of Allegheny County on

March 28, 2014, and removed by Defendant to this Court on July 11, 2014, will be denied.

Defendant is not entitled to dismissal of either this action or, in the alternative, Plaintiffs' bad

faith claim, on the basis of Plaintiffs' declining to submit to an Examination Under Oath

("EUO") prior to filing suit approximately (a) 20 months after their filing an Underinsured

Motorists Claim ("UMC") with their insurer, Defendant State Farm Mutual Automobile

Insurance Company ("Defendant" or "State Farm"); (b) eight months after the ongoing provision

of significant and uncontroverted record medical evidence to Defendant; and (c) two months

after Defendant's request for the EUO of Stacie L. Johnson's ("Plaintiff Wife").

Plaintiffs have maintained the ready availability of Plaintiff Wife for examination/deposition in this action, and have asserted as a basis for their claims that Defendant unreasonably denied (in light of the medical evidence provided and Plaintiff Wife's age/life circumstances and the extent/permanent nature of the injuries incurred as a pedestrian struck by a motor vehicle while jogging; and independent of any additional evidence from an EUO) payment of the full UMC benefits under their policy with Defendant. The law supports Defendant's entitlement to examine Plaintiff Wife under oath (as Plaintiffs do not dispute); the law does not support Defendant's contention that it is entitled to dismissal on grounds of Plaintiff Wife's failure to submit to examination under oath prior to litigation (as opposed to at Defendant's request thereafter) – in circumstances analogous to those herein and where the governing insurance policy includes an insured's duty to provide evidence under oath as Defendant reasonably requires. Nor does it support Defendant's entitlement to dismissal of Plaintiffs' claim of bad faith at this juncture.

The Court will deny Defendant's Motion to Dismiss. It will order that the Defendant timely answer the Complaint, and that Plaintiff Wife be deposed at a mutually agreed upon time and place, prior to a Status Conference or other proceedings before this Court. An Order specifying deadlines will be entered.

## II. **Factual and Procedural History**

Plaintiffs attest that on March 29, 2012, Plaintiff Wife, a 35-year-old woman, was struck by a motor vehicle and injured while jogging. Plaintiffs jointly filed a UMC with their insurer on August 1, 2012. Settlement was approved for the third party claim against the at-fault driver, for the driver's insurance liability limit of $15,000. In July, 2013, they provided the medical report

of Plaintiff's highly-regarded treating physician/surgeon, Dr. James Bradley, indicating that Plaintiff had been permanently and seriously injured; and in December, 2013, they provided additional medical documentation and requested payment of the full UMC benefits available under their policy, *i.e.* $250,000. See Plaintiffs' Response to Defendant's Motion to Dismiss ("Plaintiffs' Response"); see also Defendant's Memorandum of Law in Support of Its Motion to Dismiss ("Defendant's Memo in Support").

In mid-January, 2014, Defendant offered $110,000 to Plaintiff Wife; Plaintiffs' counsel rejected the offer within the week. Both parties regarded the issue at "impasse" and Defendant referred the claim to defense counsel. See Defendant's Memo in Support at 2-3; Plaintiff's Response at 2-3. On January 30, 2014, Defendant tendered Plaintiffs $110,000 "without prejudice[e]" to their "right to receive a higher amount in the future through continuing negotiation or alternative means of resolution." Defendant's Memo in Support at 3. In February, 2014, Defendant requested Plaintiff Wife's EUO. The policy at issues provides that the insured has a duty to, at Defendant's option, "submit to an Examination Under Oath, provide a Statement Under Oath, or do both as reasonably often as we require". Defendant's Memo in Support at 3 (quoting policy).

Plaintiffs filed this action for underinsured motorist benefits on March 28, 2014 seeking their full policy benefits and damages for bad faith under 42 Pa.C.S.A. Section 8371. Plaintiffs maintain that they advised Defendant that Plaintiff Wife would be, and remains, available for examination/deposition. See Plaintiffs' Response at 1 ("Plaintiffs did not refuse to submit to an examination . . . but rather advised defense counsel that, based upon Defendants conduct, litigation was inevitable [and] that the EUO would be in the form of a deposition . . . . Defense

3

counsel could have completed that deposition . . . but instead chose to file a Motion to Dismiss.").

## III. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007); Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57).

Recently, the United States Court of Appeals for the Third Circuit aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550

4

U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir.2013).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014).[1]

## IV. Analysis

### A. Entitlement to Dismissal of Action

As Defendant observes, "Pennsylvania has long held" that the insurer is entitled to

examination under oath of its insured. See Defendant's Memo in Support at 5 (citing The

Western Assurance Co. of Toronto v. Ackerman, 2 Penny 144 (1882)). The Court observes that

in Ackerman, "the *trial court charge[d] the jury*" that the verdict must be for the defendant

---

[1] The Court of Appeals for the Third Circuit had previously set forth the following two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. Aug. 18, 2009).

where an insured has refused examination under oath. See Defendant's Memo in Support at 5.

However, the case does not support Defendant's entitlement to dismissal of litigation where the

insured has attested availability for deposition and Defendant has made no request.

Similarly, in a case cited by Defendant, this Court concluded that State Farm's request for

an EUO was reasonable (and plaintiffs' bad faith claim should therefore be dismissed on partial

summary judgment) where Defendant's investigation identified several specific "red flags"

reasonably suggesting that the plaintiffs may have made material misrepresentations regarding

the extent of their water-damage losses, rendering the insurance contract void for concealment or

fraud. See Schmitt v. State Farm Ins. Co., 2011 WL 4368400 (Lenihan, M.J.) (W.D. Pa. Aug.

12, 2011) (recommending grant of partial summary judgment on plaintiffs' bad faith claim

following close of discovery, where (a) plaintiff refused compliance with request for EUO for

seven months, assertedly owing to a closed head injury or inability to retain counsel, and

subsequently filed suit, and (b) State Farm had "come forward with significant evidence" of a

reasonable basis for continuing investigation and refusal to pay plaintiffs' claims). The

determination does not stand for a blanket proposition, and does not support Defendant's

entitlement to dismissal of either the action or the bad faith claim in the distinguishable

circumstances *sub judice.*[2]

In another reported decision, Salerno v. New Brunswick Fire Ins. Co., 72 Pa. D&C 33,

1950 WL 3085 (Lack. Ct.Com.Pl. 1950), cited in both Defendant's Memo in Support and by this

Court in Schmitt, *supra*, the Pennsylvania Court denied the insurer's motion for judgment on the

pleadings, and held that an EUO was not a "condition precedent" to maintenance of an action on

---

[2] The Court observes that it does not appear that State Farm moved to dismiss the Schmitt litigation on grounds of the plaintiffs' failure to submit to an EUO, but proceeded with the litigation until its Motion for Partial Summary Judgment on the bad faith claim.

a fire insurance policy . See id. at 35, *2 (noting that plaintiff initially appeared for EUO but refused to answer certain questions on grounds of potential self-incrimination for arson, and that plaintiff - following trial on indictment, and sustainment of a demurrer to the Commonwealth's evidence – notified defendant of his availability for deposition in litigation and defendant did not respond). The Court held that: "[I]f plaintiff had persisted in his refusal to answer any questions touching upon the insurance risk, he would have failed to comply with his end of the insurance contract and recovery would not be possible . . . . Having removed the bar to recovery by offering to submit to full examination, his right to proceed with his action was restored." Id. The Court disagreed with "defendants' position" that "compliance was a condition precedent to the right to sue." Id.[3]

Finally, the Court directs the parties' attention to Murphy v. Fed. Ins. Co., 206 F.App'x 143, 148 (3d Cir. 2006), cited by this Court in Schmitt, *supra*, in which the Court of Appeals held that the insurer was entitled to depositions under the governing insurance policy terms, and the insured's refusal to cooperate in investigation *and to comply with District Court's Order compelling depositions*, obstructed the judicial proceedings, prejudiced the insurer, and justified the granting of summary judgment. See also id. at 149 (noting that when plaintiff failed to cooperate in Court ordered deposition, District Court concluded that the "*only issue for the Court is whether [such] failure to cooperate caused [insurer] substantial prejudice*") (emphasis added); id. (holding that "when [plaintiff] continued to obstruct the deposition process, the

_____

[3] The Court looked to the policy language which required the insured to submit to EUO as often as reasonably required and provided that no suit would be sustainable unless the policy requirements were complied with. Its denial of the insurer's motion rested on its conclusion that although no money could be recovered absent compliance, a suit could be commenced; it did not reach/address the consideration of reasonableness.

[District Court] was justified in entering the order" granting summary judgment on the basis of prejudice to defendant).

**B. Entitlement to Dismissal of Bad Faith Claim**

Defendant contends, in the alternative, that Plaintiffs may not maintain a claim of bad faith under 42 Pa.C.S.A. Section 8371 because they have failed to plead sufficient facts to support such claim. See Defendant's Memo in Support at 7.

Courts interpreting Pennsylvania law have held that a Section 8371 claim contains two elements: (1) the insurer lacked a reasonable basis for denying benefits under the applicable policy, and (2) the insurer knew or recklessly disregarded the lack of a reasonable basis for refusing the claim. See Schmitt, 2011 WL 4368400, *9 (citing cases). The level of culpability required to prove bad faith is something more than mere negligent conduct which is harmful to the insured, it need not be fraudulent but "imports a dishonest purpose and means a breach of a known duty . . . through some motive of self-interest or ill will" as compared to negligence or bad judgment. Id. (quoting O'Donnell *ex rel* v. Mitro v. Allstate Insur. Co., 734 A.2d 901, 905 (Pa. Super. 1999)). See also Smith v. Allstate Ins. Co., 904 F.Supp.2d 515, 524 (W.D. Pa. 2012) (noting that bad faith "encompasses a broad range of insurer conduct").

As Defendant correctly observes, clear averments of fact should support a claim for bad faith, and bald asserts are insufficient to overcome a motion to dismiss. See Defendant's Memo in Support at 7 (citing cases). The Court disagrees, however, with Defendant's assertion that Plaintiffs have pled nothing more than "bare bones" conclusory allegations. See id. at 8. To the contrary, the Complaint provides specific information as to the nature of Plaintiff Wife's injury, the medical evidence provided, the chronology of events, the parties' course of conduct, and the bases for Plaintiffs' allegation of statutory bad faith (*e.g.*, that the "uncontradicted medical

8

evidence provided" of the "totality and permanency" of Plaintiff Wife's injury was sufficient, in the circumstances of the case, to requirement payment in full of UMC benefits under its "obligation and duty of good faith and fair dealing"). See Complaint at 7; see also Section II, *supra*. The pleadings in this case are thus distinguishable from those in the cases to which Defendant cites, in which plaintiffs made threadbare recitals of the elements and failed to provide supportive factual averments. See Defendant's Memo in Support at 9-11 (citing, *e.g.*, Atiyeh v. National Fire Ins. Co., 742 F.Supp.2d 591 (E.D. Pa. 2010) (holding that mere conclusory statements, absent factual averments, could not sustain bad faith claim).

In addition, the Court notes that in the transcript of a decision rendered by Judge Conti in Rossi v. State Farm Mutual Automobile Ins. Co., No. 13-1785, Feb. 11, 2014 (attached as Ex. C. to Defendant's Memo in Support), a claim for bad faith was dismissed *without prejudice* on State Farm's Partial Motion to Dismiss where specific medical and causation issues remained unclarified and the plaintiff had refused to submit to another independent medical examination ("IME") and commenced litigation. In so holding, the Court noted that the allegations did not rise to the level of bad faith at that stage, where Plaintiff's own physician noted the implication of other conditions in her disability and she refused another IME, so that the Court's "assessment would be that the motion to dismiss [that claim] would be granted . . . without prejudice." See Ex. C (Transcript at 8). The Court direct that if there was a "follow-up IME and [defendant] completed [its] investigation and [failed to] make and offer in good faith", then plaintiff "could renew a motion for bad faith" and the Court was "not ruling it out" but didn't "see it presently on the face of the complaint." Id. at15-16. See also id. at 18-20 (noting that despite plaintiff's contention that once State Farm was in possession of physician's report it was obligated to pay claim rather than persist in "grossly undervaluing" it, Court could not ignore other possible

9

medical conditions/disability causation factors implicated by other evidence);[4] id. at 21 (directing

that IME be arranged "ASAP, and if they don't pay you after that, then you can come back and

file a motion to amend your complaint to include the bad faith claim"); id. at 22 (contrasting

"cases where bad faith claims have proceeded, . . . where there has been a complete medical file

prepared and they're just refusing to provide coverage . . . and there are different issues").[5]

 Finally, the Court observes that the case will go forward, and the same discovery will be

relevant, and the same facts will be in evidence as to Plaintiffs' underlying claims and their

requests for relief. Defendant remains free to re-raise Plaintiff's potential entitlement to

maintenance of a bad faith claim at a later time.

## V. **Conclusion**

 For the reasons aforesaid, Defendant's Motion to Dismiss (ECF No. 4) will be denied,

and the action will proceed to Answer and deposition, in accordance with this Court's Order to

follow.

$2/24/15$

By the Court:

Lisa Pupo Lenihan
United States Magistrate Judge

cc: Counsel of record

---

[4] Compare Plaintiff's Response at 2 ("State Farm was also in possession of the uncontradicted
medical report of renowned treating surgeon, Dr. James P. Bradley . . . ."). Cf. Complaint at 2
("Said report outlined the extensive treatment provided to Plaintiff for her knee injury and
thoroughly discussed the permanency of her injuries and her guaranteed future damages.")

[5] The Court observes that in Rossi, as in Schmitt, it does not appear that State Farm filed a
Motion to Dismiss on the basis of the plaintiffs' filing an insurance action prior to submitting to
the insurer's request for examination.

10